(893 P.2d 267)
No. 71,543

STATE OF KANSAS, *Appellee*, v. DAVID MARTINEZ, *Appellant*.

Opinion filed April 7, 1995.

*Stephen Douglas Bonney*, special appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Robert L. Stuart*, assistant district attorney, *Nick A. Tomasic*, district attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before LARSON, P.J., RULON and PIERRON, JJ.

PIERRON, J.: David Martinez was found guilty by a jury of attempted aggravated assault. In this direct appeal, defendant argues he was denied his right to a speedy trial. Defendant also contends he was denied due process because the jury was instructed on and he was found guilty of an offense that allegedly does not exist under Kansas law.

Larry and Lori Grubb were driving Sheree Hale to a store to collect boxes to be used by Sheree, as she was moving out of her apartment. Sheree saw defendant walking down the street. Defendant and Sheree had lived together until early May 1993. When she saw defendant, Sheree asked Larry to stop the car, and she asked defendant if he wanted to help get boxes. Before getting into the car, defendant pulled a sawed-off shotgun from his pants. He got into the car with the gun, despite requests that he not bring the gun into the car.

Lori asked Larry to take her and the children home because she did not want to be around the gun. Larry drove back to their home, directly across the street from Sheree's apartment. Upon reaching the apartment, Sheree told defendant to get rid of the

gun. Defendant got out of the car, entered Sheree's apartment, and returned minutes later without the gun.

Sheree and defendant returned to her apartment and began to argue. While in the kitchen, Sheree asked defendant where he had put the gun. Defendant pulled the shotgun out of the clothes dryer and began swinging it around, but he did not point it at anyone. Sheree told defendant to get the gun out of her house. She then went to the front room to watch television and ignored the defendant.

At trial, Sheree testified the next thing she knew, she heard a "click" at the side of her head. She turned her head and saw the gun was inches away and pointed at her left temple. She immediately knocked the gun away with her arm.

Sheree testified she had not seen the gun from the time she left the kitchen and did not know defendant was next to her until she heard the click. Upon hearing the click, Sheree suspected the gun was not loaded. Sheree testified that when she saw the gun pointed at her, she was mad. She did *not* testify that she was in immediate apprehension of bodily harm.

After defendant left her apartment, Sheree went across the street to the Grubbs' and called the police. Defendant was arrested on May 17, 1993, and charged with aggravated assault. He was arraigned on June 10, 1993, and the case was set for trial in August 1993. However, for reasons described below, defendant was not tried until January 5, 1994.

At the conclusion of all the evidence, the trial court held an instruction conference. Over defendant's objection and at the request of the State, the trial court instructed the jury on attempted aggravated assault as a lesser included offense.

The jury found defendant guilty of one count of attempted aggravated assault. On March 17, 1994, defendant was sentenced to one to two years, and his guidelines sentence was calculated to be eight months. The trial court granted defendant's request for probation. Defendant appeals his conviction.

Defendant first argues his statutory right to a speedy trial was violated. The Sixth Amendment to the Constitution of the United

States and § 10 of the Bill of Rights of the Kansas Constitution guarantee a criminal defendant the right to a speedy trial. In addition, the Kansas Legislature has imposed a statutory time limitation, K.S.A. 22-3402, within which an accused must be brought to trial. *State v. Green*, 252 Kan. 548, 550, 847 P.2d 1208 (1993). "The purpose of K.S.A. 22-3402 is to implement an accused's constitutional right to a speedy trial." *State v. Green*, 254 Kan. 669, 672, 867 P.2d 366 (1994).

K.S.A. 22-3402(1) provides:

"If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within ninety (90) days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3)."

"It is the State's obligation to insure that an accused is provided a speedy trial." *Green*, 254 Kan. at 672. The accused has no duty to bring himself to trial. *State v. Warren*, 224 Kan. 454, Syl. ¶ 2, 580 P.2d 1336 (1978). If the State fails to bring the accused to trial within the time limit fixed by K.S.A. 22-3402, the accused is entitled to be discharged. However, "[d]elays which are the result of the application or fault of the accused are not counted in computing the statutory speedy trial period." *Green*, 252 Kan. at 550; see K.S.A. 22-3402(1).

Defendant was brought to trial 209 days after arraignment. Defendant, who was held in custody for the entire time prior to his trial, contends his right to a speedy trial, as set forth in K.S.A. 22-3402(1), was violated and the charges should have been dismissed.

The defendant's case was first set for trial on August 16, 1993, well within the statutory 90-day period. The trial court continued the trial until September 13, 1993. The first continuance was based on K.S.A. 22-3402(3), which provides:

"(3) The time for trial may be extended beyond the limitations of subsections (1) and (2) of this section for any of the following reasons:

. . . .

"(d) Because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed for trial by this

section. Not more than one continuance of not more than thirty (30) days may be ordered upon this ground."

Based on K.S.A. 22-3402(3)(d), the trial would have been timely on September 13, 1993, even though the 90-day period expired on September 8, 1993.

On September 2, 1993, 84 days after the arraignment, defendant requested a continuance because defense counsel was going on vacation. Defense counsel informed both the court and the State that he would be returning to the area on the evening of September 14, 1993. The trial court granted the continuance and ordered the case to be reset for trial as soon as possible.

Defendant acknowledges that delays which are the result of the application or fault of the accused are not counted in computing the statutory speedy trial period. However, defendant argues that the delay in rescheduling after his motion for continuance was unreasonable and charging the entire time to defendant would be manifestly unfair.

In *State v. Dreher*, 239 Kan. 259, 261, 717 P.2d 1053 (1986), the Kansas Supreme Court held that "any additional period of time assessed against a defendant due to the necessity of rescheduling a trial because of his fault should be limited to a *reasonable time* measured by the particular circumstances of the case." See *State v. Roman*, 240 Kan. 611, 613, 731 P.2d 1281 (1987); *State v. Bean*, 236 Kan. 389, 393, 691 P.2d 30 (1984); *State v. Sherman*, 217 Kan. 326, 330, 536 P.2d 1373 (1975). The State is not relieved of its duty to provide the accused a speedy trial merely because the accused has requested a continuance.

From September 15, 1993, when defense counsel returned from vacation, until January 5, 1994, the day the trial was held, 112 days had passed. During this period, the State apparently made one attempt to set the trial for October 4, 1993. Unfortunately, the State could not secure the complaining witness' presence in court on that particular day. There is no evidence the State made further efforts to satisfy its duty to bring defendant to trial within a reasonable time of the continuance.

The State's lack of concern for the defendant's right to a speedy trial is further illustrated by its reaction to defendant's motion to

dismiss. The motion was filed on November 19, 1993. When it was heard on December 3, 1993, the case had still not been scheduled for trial. Even after the trial court informed the parties that the case should have been set for trial before that time, it took the State 33 days to bring the defendant to trial.

The State seeks to rely on K.S.A. 22-3402(3)(c), which provides that the time for trial may be extended if:

"(c) There is material evidence which is unavailable; that reasonable efforts have been made to procure such evidence; and that there are reasonable grounds to believe that such evidence can be obtained and trial commenced within the next succeeding ninety (90) days."

According to the State, since it was unsuccessful in securing the witness' testimony for October 4, 1993, the delay should be classified as a continuance based on K.S.A. 22-4302(3)(c). The State cites no authority for treating the delay as a continuance when the trial court did not consider the issue or grant a continuance. Furthermore, the State's own argument illustrates the difficulty in its position. If the State is given the benefit of a 90-day continuance, beginning October 4, 1993, those 90 days expired 3 days before defendant was actually tried.

Nonetheless, there may have been circumstances not reflected in the record that would make the delay in this case reasonable. Under normal circumstances, we would be inclined to remand this case to the district court for a determination on the reasonableness of the delay. In light of our holding on the next issue, however, such a remand is not necessary.

Defendant next argues his conviction for attempted aggravated assault must be reversed because no such crime existed in this state at the time in question. We agree.

In *State v. Sexton*, 232 Kan. 539, 542-43, 657 P.2d 43 (1983), the Kansas Supreme Court observed: "It has long been the rule in Kansas that all crimes are established by legislative act. There are no common law crimes in the state, and there can be no conviction except for such crimes as are defined by statute." See *State v. Young*, 55 Kan. 349, 356, 40 Pac. 659 (1895).

"[I]t is an ultimate function of the courts to determine whether a statute or combination of statutes actually proscribes certain

conduct as criminal." 232 Kan. at 542. Thus, determining whether certain conduct is criminal is a question of statutory interpretation. "Interpretation of a statute is a question of law." *State v. Donlay,* 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 (1993). See *Todd v. Kelly,* 251 Kan. 512, 515, 837 P.2d 381 (1992). On questions of law, our review is unlimited. This court is not bound by the determinations of the district court. *Memorial Hospital Ass'n, Inc. v. Knutson,* 239 Kan. 663, 668, 722 P.2d 1093 (1986).

The statutory provisions relevant to a determination of whether the crime of attempted aggravated assault exists include K.S.A. 1992 Supp. 21-3301, K.S.A. 21-3408, and K.S.A. 21-3410. The relevant portions of K.S.A. 1992 Supp. 21-3301 provide:

"(a) An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime.

"(b) It shall not be a defense to a charge of attempt that the circumstances under which the act was performed or the means employed or the act itself were such that the commission of the crime was not possible."

A simple assault is defined in K.S.A. 21-3408 as follows:

"An assault is an intentional threat or attempt to do bodily harm to another coupled with apparent ability and resulting in immediate apprehension of bodily harm. No bodily contact is necessary."

Finally, K.S.A. 21-3410(a) defines aggravated assault:

"Aggravated assault is:

(a) Unlawfully assaulting or striking at another with a deadly weapon; or

(b) Committing assault by threatening or menacing another while disguised in any manner designed to conceal identity; or

(c) Willfully and intentionally assaulting another with intent to commit any felony."

The issue of whether there can be a distinct offense of an attempt to commit an assault has never been directly addressed by the appellate courts of this state.

In *State v. Patchett,* 229 Kan. 163, 621 P.2d 1011 (1981), the Kansas Supreme Court acknowledged the issue but left the question unresolved. In *Patchett,* the defendant argued there can be no such crime as attempted assault because an assault is an attempted battery and an attempted assault would consist only of

an attempt to attempt a crime, which action cannot be a crime. 229 Kan. at 165.

There are at least two reported cases in Kansas where the defendant has been convicted of some type of attempted assault. Unfortunately, the issue of whether that crime exists was never addressed.

In *Fields v. State*, 195 Kan. 718, 719, 408 P.2d 674 (1965), the defendant entered a plea of guilty to one count of attempted felonious assault. On appeal, defendant raised several issues regarding his conviction. However, he never raised the issue of whether such a crime exists. The Supreme Court affirmed the judgment. This case, however, involved a plea of guilty.

In *State v. Boan*, 235 Kan. 800, 807, 686 P.2d 160 (1984), the issue was whether the trial court erred in admitting a prior conviction under K.S.A. 60-455. The prior conviction was for attempted aggravated assault and occurred in 1977. The Supreme Court found the evidence was properly admitted.

The *Patchett* court stated: "There is authority which recognizes the existence of attempted aggravated assault. *State v. Clanton*, 219 Kan. 531, 533-34, 548 P.2d 768 (1976); Perkins on Criminal Law, Ch. 2, § 2 B3 (2nd ed. 1969); Annot., 79 A.L.R.2d 597. However, we do not reach the question in this case." 229 Kan. at 165.

In the instant case, defendant's argument that there is no such crime as an attempted assault is based on the same rationale as the argument made in *Patchett*. Defendant argues that because an assault is defined as an intentional threat or attempt to do bodily harm, it is a logical absurdity to allow a prosecution for an attempt to attempt.

Defendant's argument is directed at a common-law conception of assault that has long since been abandoned in this state. At common law, an assault was merely an attempt to commit a battery. 2 Wharton's Criminal Law § 179 (15th ed. 1994); Perkins & Boyce, Criminal Law § 2, p. 159 (3d ed. 1982); see *State v. Daniels*, 12 Kan. App. 2d 479, 482, 753 P.2d 300 (1987). Furthermore, it is generally recognized that "[t]here can be no attempt to commit a crime which is itself an attempt, i.e., there

can be no attempt to commit an attempt." 4 Wharton's Criminal Law § 741, p. 568 (14th ed. 1981). See Annot., 79 A.L.R.2d 597 §§ 1, 2; 6 Am. Jur. 2d, Assault and Battery § 10; see also 21 Am. Jur. 2d, Criminal Law § 158, p. 313 (stating "where the substantive offense is in the nature of an attempt, there can be no conviction for an attempt to commit it, since it would be merely an attempt to attempt"). At common law, since an assault was itself an attempted battery, it was generally held there could not be an attempt to commit an assault. 4 Wharton's Criminal Law § 741, p. 568. See *Allen v. People*, 175 Colo. 113, 485 P.2d 886 (1971); *Wilson v. State*, 53 Ga. 205 (1874); *Green v. State*, 82 Ga. App. 402, 61 S.E.2d 291 (1950); *State v. Davis*, 108 N.H. 158, 229 A.2d 842 (1967); *State v. Hewett*, 158 N.C. 627, 74 S.E. 356 (1912).

The offense of assault, however, is no longer defined strictly as an attempted battery. In *Daniels*, 12 Kan. App. 2d 482-83, this court recognized:

"In Kansas today, . . . as in most states, an assault is not necessarily an attempted battery. As stated in 2 Wharton's Criminal Law § 180, pp. 300-01:

'In most jurisdictions, there is another way by which as assault may be committed: by defendant's performing an act which places another in reasonable apprehension of an imminent contact. (This also happens to be the tort theory of assault.) Under this theory of assault, the defendant need not intend to cause a contact, and by definition the victim must be aware of the impending contact.'

"As the Judicial Council note to K.S.A. 21-3408 indicates, the definition of assault under the criminal code adopted in 1969 'follows the tort concept of assault and is narrower than the usual criminal definition of assault. The crime of assault does not usually include the apprehension of bodily harm as a necessary element of the offense. The status of the former Kansas law is not entirely clear.' Under this theory of assault, the defendant's intent is not the determining factor; the focus is shifted to the victim's perception of impending harm. Also, the defendant may intend either just to threaten or to do bodily harm. K.S.A. 21-3408."

According to K.S.A. 21-3408, an assault can result from either an intentional threat or an attempt to do bodily harm (an attempted battery). Thus, defendant's argument that an attempt to attempt a crime is not a crime at all is only applicable to those cases in which the assault arose out of an attempt to do bodily

harm. In such a case, a defendant cannot be convicted of an attempt to attempt to do bodily harm.

Defendant's argument, however, leaves intact the possibility of an attempted assault arising out of intentional threat to do bodily harm. We now turn to that issue.

At Annot., 79 A.L.R.2d at 598, it is written:

"Whether or not there can be a distinct offense of an attempt to commit an assault depends, from the logical standpoint, on what an assault is regarded as being. If an assault is an 'attempt' to do something, the contention can be made that there can be no 'attempt to attempt', but if an assault is regarded as simply putting a person in fear of his life or of personal injury, perhaps there can, from the philosophical standpoint, be an attempt at an assault."

This same proposition is explained at 4 Wharton's Criminal Law § 741, p. 568-69:

"If an assault is defined as the performance of an act which places another in reasonable apprehension of an imminent contact, the defendant intends merely to frighten the victim; he does not intend to follow through and cause the contact of which the victim is apprehensive. Under this definition of assault, there would appear to be no conceptual difficulty in finding a defendant, who attempted but fails to frighten the victim, guilty of an attempt to commit an assault."

It should be apparent that there is no conceptual or philosophical difficulty preventing a conviction for attempted assault arising out of an intentional threat to do bodily harm. Nonetheless, we find that well-established rules of statutory construction require the conclusion that there could not be a valid conviction for attempted assault in Kansas under the laws in effect at the time of the incident in this case.

It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. *City of Wichita v. 200 South Broadway*, 253 Kan. 434, 436, 855 P.2d 956 (1993). See *State v Gonzales*, 255 Kan. 243, 248-49, 874 P.2d 612 (1994). The legislature is presumed to intend that a statute be given a reasonable construction, so as to avoid unreasonable or absurd results. *Todd v. Kelly*, 251 Kan. at 520. Furthermore, our criminal statutes are to be construed strictly against the State. *State v. JC Sports Bar, Inc.*, 253 Kan. 815, 818, 861 P.2d 1334 (1993).

K.S.A. 21-3408 makes a threat to do bodily harm a crime only if it results in immediate apprehension of such harm. See Judicial Council note appended to K.S.A. 21-3408. The apprehension of bodily harm is a threshold requirement of criminal culpability. See *State v. Warbritton*, 215 Kan. 534, 537-38, 527 P.2d 1050 (1974). By specifically requiring the defendant's action to result in immediate apprehension of bodily harm, the legislature has chosen to punish conduct which causes a particular result rather than only specific conduct.

Our attempt statute, K.S.A. 1992 Supp. 21-3301(a), necessarily requires that the defendant failed to perpetrate the subject crime, *i.e.*, the defendant failed to put the victim in immediate apprehension of bodily harm. Since the legislature has chosen to punish a particular result in K.S.A. 21-3408, it would contravene the purpose of the statute to make conduct criminal that did not achieve the result the legislature has deemed punishable. Applying the attempt statute to K.S.A. 21-3408 would lead to a result apparently not intended by the legislature.

This principle is best reflected by the Supreme Court's recent decision in *State v. Robinson*, 256 Kan. 133, 883 P.2d 764 (1994). In that case, it was held that Kansas does not recognize the crime of attempted felony murder. The court explained: "The application of the felony-murder doctrine in Kansas always has depended on the existence of an actual homicide." 256 Kan. at 136. Absent a homicide there cannot be a felony murder and there cannot be an attempted felony murder. Furthermore, "the purpose of the felony-murder doctrine is to deter those engaged in felonies from killing negligently or accidentally and the doctrine should not be extended beyond the rational function which it was designed to serve." 256 Kan. at 136.

The purpose of the assault statute is to deter individuals from placing victims in immediate apprehension of bodily harm. Like the felony-murder doctrine, assault should not be extended beyond the rational function it was designed to serve. Other crimes to which the attempt statute has been applied are aimed at punishing the act, not the result. This is due, in part, to the fact that other attempts, such as attempted murder and attempted rape,

are dangerous in and of themselves. Thus, the legislature has chosen to prohibit and punish the conduct even if the attempted result is not achieved. A threat that does not put the person threatened in apprehension of harm does not meet the requirement. Without the requisite apprehension, there is no harm.

The State argues that K.S.A. 21-3410 defines aggravated assault more broadly than K.S.A. 21-3408 defines simple assault. According to the State, the inclusion of the term "striking at another with a deadly weapon" in K.S.A. 21-3410(a) makes the attempt statute applicable because a person can attempt to strike at another with a deadly weapon. The State's argument is contrary to the well-established law of this state.

In *State v. Nelson*, 224 Kan. 95, 97, 577 P.2d 1178 (1978), the Supreme Court held: "All elements required to prove a simple assault must necessarily be included in the elements of the greater offense of aggravated assault." Furthermore, in *Daniels*, 12 Kan. App. 2d at 481, this court observed:

"[A]ggravated assault is unlawfully assaulting or striking at another with a deadly weapon. K.S.A. 21-3410(a). Although the State points to the words 'striking at' and asserts the elements of simple assault are not all required for aggravated assault, this proposition was rejected in *State v. Nelson*, 224 Kan. [at] 97-98."

The State's argument that aggravated assault is defined more broadly than simple assault is not valid. Under either degree of assault, the State had to show the victim was placed in immediate apprehension of bodily harm. Because the legislature had chosen to punish a defendant only if that result is achieved, the attempt statute cannot be used to impose criminal liability when defendant has failed to achieve the result the legislature has chosen to make punishable.

We note that K.S.A. 21-3408 was amended in 1994. We make no ruling as to this new statute. We find that under the statutes in force in the instant case, the crime of attempted aggravated assault did not exist. The defendant's conviction is therefore reversed.

Although not necessary for this decision, we would also note that due to the failure of Sheree to testify that the act complained of placed her in immediate apprehension of bodily harm, there

is also a likelihood that there was a failure of proof to establish any kind of assault under our laws.

Reversed.