(595 P.2d 352)

No. 50,254

STATE OF KANSAS, *Appellee,* v. FRANCIS D. URBAN, *Appellant.*

Opinion filed June 1, 1979.

*William D. Mize,* public defender, of Salina, for the appellant.

*Karen Barefield,* County Attorney, and *Robert T. Stephan,* Attorney General, for the appellee.

Before SPENCER, P.J., SWINEHART and MEYER, JJ.

SPENCER, J.: Having been charged with burglary, K.S.A. 21-3715, and aggravated assault, K.S.A. 21-3410, defendant was found not guilty of the former but guilty of the latter, and has appealed.

Viewed in the light most favorable to the State (*State v. Berry,* 223 Kan. 566, Syl. ¶ 3, 575 P.2d 543 [1978]), the record reveals that Ken Fuller and his two sons, Norman and Ken J., discovered defendant's pickup on their abandoned farm in Ottawa County. Since they apparently considered defendant a likely burglar, one of them removed the coil wire from his engine in order to detain defendant so that Ken J. could leave to call the sheriff. When defendant appeared and discovered he was unable to start the engine of his pickup, he inquired of the Fullers as to what they had done. Receiving no reply, defendant took a .22 caliber semi-automatic rifle from his pickup, loaded it, and while holding the rifle in the air at an approximate 45 degree angle, beckoned to the Fullers in what the State refers to as a "menacing fashion." Fuller then hurried to his son's vehicle and told his son, "get out of here as fast as you can."

K.S.A. 21-3408 defines assault as follows:

"An assault is an intentional threat or attempt to do bodily harm to another coupled with apparent ability and resulting in immediate apprehension of bodily harm. No bodily contact is necessary."

K.S.A. 21-3410 provides in pertinent part:

"Aggravated assault is:

"(*a*) Unlawfully assaulting or striking at another with a deadly weapon . . . ."

Defendant's argument that the evidence in this case is insufficient to sustain the conviction because there was no proof of an intent on his part to "carry the threat into action" is without merit. No specific criminal intent is required for aggravated assault other than to communicate to the victim a threat to do bodily harm. The actor must have the apparent ability to injure his victim and the threat must result in immediate apprehension of bodily harm. The actor does not have to intend to injure his victim. *State v. Deutscher,* 225 Kan. 265, 271-272, 589 P.2d 620 (1979). The jury could well have believed defendant intended to communicate a threat of bodily harm to the Fullers.

Defendant's argument that the evidence is insufficient to show an immediate apprehension of bodily harm is also unavailing. Although Ken Fuller did not explicitly state in his testimony that he was afraid, such was clearly indicated. Norman, when asked if he was afraid, stated, "Yes." *State v. Warbritton,* 215 Kan. 534, 527 P.2d 1050 (1974), relied on by defendant, is distinguishable in that the alleged victim in that case consistently maintained she felt no fear. The evidence of fear of bodily harm in this case was sufficient to go to the jury.

Defendant contends the court erred in failing to suppress evidence of the rifle which was seized from his pickup after his arrest. The State argues that this is not properly before the court because defendant failed to object to the admission of the rifle at trial. The rationale underlying the contemporaneous objection rule, K.S.A. 60-404, is that stating the objection and grounds therefor permits the court to preclude improper evidence from affecting the decision. *State v. Gordon,* 219 Kan. 643, Syl. ¶ 9, 549 P.2d 886 (1976). In this case, the purpose for the rule was satisfied when defendant moved to suppress the evidence and a hearing was held. Under the circumstances, defendant's failure to object at trial does not preclude consideration of the issue on appeal.

It is argued that the rifle was properly seized as being in "plain view." In order for the "plain view" exception to the warrant requirement to apply, it must be shown (1) that the initial intrusion which afforded authorities the plain view was lawful; (2) that

the discovery of evidence was inadvertent; and (3) that the incriminating nature of the evidence was immediately apparent. *State v. Jones,* 2 Kan. App. 2d 38, 573 P.2d 1134 (1978). Deputy Sidders testified that he saw the rifle only after he opened the door of defendant's pickup. Was the "initial intrusion" lawful?

Defendant was arrested at 3:03 p.m. the day following the incident while he was inside the residence of a friend, and was taken to the Belleville Police Station. His vehicle remained parked at the residence and off the street. Later that afternoon, officers from Ottawa County arrived to take custody of defendant and, at 4:50 p.m., Deputy Sidders from Ottawa County went to the friend's residence for the stated purpose of impounding the vehicle. The State argues that Deputy Sidders opened the door of the pickup in order to drive it to the Belleville Police Station where it was to be impounded for safekeeping subsequent to a legal arrest. It is stated that, although the vehicle was parked in a private driveway, defendant was not a resident of the county in which he was apprehended and impoundment was necessary since defendant was to be transported from Mitchell County to Ottawa County to appear before the district magistrate judge; that defendant was therefore incapable of dealing with the vehicle and there was a need for police custodial care. The State points out that it is the duty of the police to protect the valuables of the arrested person as well as itself against possible liability and that although the deputy was not searching for evidence against defendant, he nevertheless came across an "incriminating object" in the process of impounding the vehicle. The reasoning of the State on this issue is not persuasive.

In *State v. Boster,* 217 Kan. 618, 539 P.2d 294 (1975), the court held impoundment of a vehicle by the police is lawful if authorized by statute, ordinance, or for other "reasonable grounds." We are not referred to any statute or ordinance authorizing impoundment as in this case, nor are we aware of any such authorization. K.S.A. 1978 Supp. 8-1102 permits impoundment of a motor vehicle which has been abandoned on a highway or other property open to use by the public for a period of time in excess of forty-eight hours. K.S.A. 1978 Supp. 8-1570 permits the police to remove a vehicle from a highway or a roadway under certain conditions not applicable in this case. In this instance, defendant's pickup was parked off the road in a private driveway at the

home of a friend. In *Boster,* the Supreme Court, quoting from *State v. Singleton,* 9 Wash. App. 327, 511 P.2d 1396 (1973), gave examples of what might be considered reasonable grounds for impoundment:

" 'Reasonable cause for impoundment may, for example, include the necessity for removing (1) an unattended-to car illegally parked or otherwise illegally obstructing traffic; (2) an unattended-to car from the scene of an accident when the driver is physically or mentally incapable of deciding upon steps to be taken to deal with his property, as in the case of the intoxicated, mentally incapacitated or seriously injured driver; (3) a car that has been stolen or used in the commission of a crime when its retention as evidence is necessary; (4) an abandoned car; (5) a car so mechanically defective as to be a menace to others using the public highway; (6) a car impoundable pursuant to ordinance or statute which provides therefor as in the case of forfeiture . . . .' " 217 Kan. at 624.

The State does not argue that defendant consented to the removal of his vehicle from the private driveway to the police station, or that defendant's friend was not just as able to protect the vehicle or had for any reason requested removal of the vehicle from the driveway, or that there was probable cause to believe the vehicle contained contraband or evidence of a crime. The vehicle was not removed from a public highway in the interest of public safety nor was it taken under the authority of any statute or ordinance. The State contends only that there was need for police custodial care in order to protect the property of defendant. There is no reason offered as to why the police did not take charge of the vehicle at the time of defendant's arrest rather than to wait almost two hours before doing so. While we recognize the necessity of the State to protect by appropriate measures the property of an arrested person and the possible liability for tort claims, the burden of proof to show the lawfulness of a Fourth Amendment search and seizure rests upon the State. Under the authority of *State v. Boster,* 217 Kan. 618, and cases cited therein, we find that the State has failed to carry this burden. See also *Dunkum v. State,* 138 Ga. App. 321, 226 S.E.2d 133 (1976).

We find that the impoundment of defendant's vehicle was unauthorized and unreasonable and, accordingly, the initial intrusion by the police was unlawful and the plain view exception to the warrant requirement is not available. We conclude that it was error to deny defendant's motion to suppress evidence. Furthermore, after a careful review of the record, this court is not able to declare that the admission of the rifle into evidence was

harmless beyond a reasonable doubt. *State v. Mims,* 220 Kan. 726, 556 P.2d 387 (1976).

Reversed and remanded with directions to grant a new trial.